## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ROBERT CORTEZ,

        Plaintiff,

vs.                                       No. CIV 06-1198 JB/ACT

JOHN WRIGHT, individually,

        Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion to Dismiss Defendant Wright Individually and Memorandum in Support, filed February 12, 2008 (Doc. 16). The Court held a hearing on April 3, 2008. The primary issue is whether Plaintiff Robert Cortez has a cause of action against Defendant John Wright, an EEOC investigator, in his individual capacity, for violating Cortez' due-process rights by failing to file or to amend EEOC charges, or to advise Cortez to file charges. Because Cortez has not demonstrated that Wright has violated Cortez' procedural due-process rights, because Cortez has not demonstrated that there has been any violation of any other constitutional right, and because Cortez has failed to meet his burden of showing that the right alleged to have been violated was clearly established at the time of Wright's alleged unlawful conduct, the Court will grant the motion to dismiss.

### FACTUAL BACKGROUND

Cortez is an Hispanic male who was born on February 6, 1955, and turned forty years of age in 1995. See Plaintiff Robert Cortez' Response in Opposition to Defendant John Wright's Motion to Dismiss, and Supporting Memorandum at 7, filed March 19, 2008 (Doc. 17)("Response"). Cortez worked with Wal-Mart Stores from April 28, 1986, until April 29, 2003. See id. During his

employment with Wal-Mart Stores, Cortez was promoted to Co-General Manager in Puerto Rico, and served in that position from approximately 1997 through October 1998.  See id.  Although Cortez was promoted to Co-General Manager in Puerto Rico, when he returned to the United States, he was passed over for promotions on many occasions.  See id. at 7-8.

In the 300 days before Cortez filed his EEOC claim on June 25, 2002, he identified seven available positions to which he applied and for which he was qualified, but was not promoted.  See id. at 8.  Although Cortez identified many instances of discrimination, Wright completed only one charge of discrimination for Cortez.  See id.  Cortez was in regular contact with Wright during the investigation that lasted from June 25, 2002, until July, 2003, when the EEOC issued the right-to-sue letter to Cortez.  See id.

Cortez informed Wright, after Cortez filed his EEOC charge on June 25, 2002, that there were more general manager positions to which Cortez applied, but that were filled by younger employees.  See Plaintiff Robert Cortez' Response in Opposition to the United States of America's Motion to Dismiss Defendants EEOC and John Wright, and Supporting Memorandum, filed August 21, 2007  (Doc. 5), Exhibit A, Affidavit of Robert Cortez (taken August 21, 2007) at ¶ 1, at 1 (Doc. 5-2)("Cortez Aff.") .  Wright did not complete additional charges for Cortez.  See Response at 8.

In Cortez v. Walmart Stores, Inc., CIV 03-1251 BB/LFG, the Honorable Bruce Black, United States District Judge, precluded Cortez from pursuing claims for wrongful constructive termination.  See Memorandum Order and Opinion at 4-6, filed Jan. 14, 2005 (Doc. 50).  Cortez alleges that Judge Black's decision caused him injury and damages, because he was unable to pursue front-pay damages calculated in the amount of $1,400,000.00.  See Response at 3.  Cortez contends that he was also precluded from pursuing claims of failure to promote and allowed to litigate only those

claims that fell within the 300-day period before the June 26, 2002 EEOC charge filing date, causing him injury and damages, because he was unable to pursue calculated back-pay damages of $531,000.00.  See id.

## PROCEDURAL BACKGROUND

The Court, in its Memorandum Opinion and Order, filed October 16, 2007 (Doc. 14)("Memorandum Opinion and Order"), dismissed the other named defendant.  See Doc. 14.  The Court dismissed with prejudice the common-law negligence claims against the United States in the First through Fourth Causes of Action of Cortez' Complaint.  See Memorandum Opinion and Order at 23.  In doing so, the Court noted that the remedy against the United States under the Federal Tort Claims Act is exclusive of any other remedy for common-law torts against the federal employee under 28 U.S.C. § 2679(b)(1).  See Memorandum Opinion and Order at 14.  Further, the FTCA precludes any action against the individual employee for common-law torts, "even when the FTCA itself precludes Government liability," because of the exceptions contained in the FTCA.  United States v. Smith, 499 U.S. 160, 166 (1991).

In the Court's prior opinion on the common-law tort claims, the Court noted that there is no duty under state or federal law, including the Constitution, requiring Wright to amend or to file charges on Wright's behalf, or to advise him of changes in the law.  See Memorandum Opinion and Order at 20.  The Court stated:

> It is generally the charging party's obligation to file charges under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634.  See 29 U.S.C. § 626(d); 29 C.F.R. § 1626.8.  The EEOC's obligation is not to file or amend charges on the charging party's behalf, although it "may render assistance in the filing of a charge" under 29 C.F.R. § 1626.4.

Memorandum Opinion and Order at 16.  The Court further stated:

-3-

> Ultimately, Cortez, not the EEOC, is responsible for knowing the law, including any changes that may affect his rights.  The EEOC had no state law duty to Cortez to advise him on how to protect his legal rights under the ADEA.  Nor has Cortez pointed to any federal law, regulation, or guidance requiring the EEOC to become his legal advisor.  Any assistance the EEOC provided Cortez was pursuant to its discretionary authority to further the goals and purposes of the ADEA and regulations, not under some duty that state law created.

Memorandum Opinion and Order at 14.

Thus, the only remaining claim against Wright, individually, is the Fifth Cause of Action asserting Fifth Amendment violations for deprivation "of his constitutionally guaranteed property rights without due process or equal protection of the laws and without just compensation." Complaint ¶¶ 73-79, at 10-11.  The specific constitutional violation that Cortez alleges in the Complaint is that Wright deprived him of certain EEO claims by failing to amend or to file new charges for him with the EEOC, or by failing to advise Wright of his right to himself file additional charges, for subsequent acts of retaliation by his employer, as an intervening Supreme Court decision required.  See Complaint ¶¶ 46-50, at 6-7.  Wright requests that the Court dismiss the action as to him individually on the basis of qualified immunity.  See Motion at 1.

Cortez opposes this motion.  On March 19, 2008, Cortez filed his Response in Opposition. See Response.  Cortez contends that "[t]he EEOC is the gatekeeper and master of our 'affairs' in the discrimination arena."  Response at 6.  Cortez maintains that the distinction between what is discretionary and what is not is not hard to find.  See id.  Cortez argues that the EEOC's control and duty imposed over discrimination claims is so plenary that no person has a right to pursue a discrimination claim unless a charge is first filed with and investigated by the EEOC.  See Response at 3.  Cortez contends that the EEOC has the option to represent individuals of the general public and to institute discrimination suits.  See Response at 3.  Cortez argues that the EEOC is staffed by

attorneys who commonly advise and prosecute civil discrimination suits for individuals.   See id. at 3-4.  Cortez asserts that, although an EEOC investigator may or may not be an attorney, by the very nature of the investigation that must be completed, the investigator must be versed in the intricacies of the discrimination laws so that the investigator can advise the charging party.  See id. at 4.  Cortez argues that the EEOC investigator must investigate the claims made, and make a decision whether to believe that there was discrimination in the workplace.  See id.  Cortez contends that the EEOC investigator guides the charging party through each of the steps of the investigation, including mediation with the employer.  See id.  Cortez asserts that, once the investigation is complete, the EEOC investigator decides whether there is a finding of discrimination and issues the right-to-sue letter.  See id.

Cortez contends that, once the investigation is complete, the EEOC may decide to represent the individual in a civil suit.  See id. at 4.  Cortez asserts that the prosecution of civil-discrimination suits is unlike the regulatory work that other agencies undertake, such as regulating imports, exports, communications, pollution, immigration, air traffic, but more of a private function that private attorneys provide to clients on a daily basis.  See id.  Cortez argues that the public-regulatory function of the EEOC's processing and investigation of discrimination charges is a uniquely governmental function that private parties are incapable of performing.  See id.

On March 27, 2008, Wright filed his Reply.  See Reply in Support of Motion to Dismiss Defendant Wright Individually, filed March 27, 2008 (Doc. 18)("Reply").  Wright contends that, while it is true that no person has a right to pursue a discrimination claim in federal court until he or she exhausts the EEOC's procedures, the EEOC has no other control or power over the discrimination claim.  See Reply at 2.  Wright asserts that an investigator is not an attorney.  See id.

Wright argues the investigator is not the decisionmaker regarding the EEOC's reasonable cause determinations.  See id.  Wright argues that the investigator analyzes, investigates, and then ultimately recommends to his or her supervisor, who then comments upon the analysis and/or recommendation to the District Director.  See Reply at 2.  Wright contends that the District Director is the reasonable cause decision-maker, not the investigator.  See id. (citing 29 C.F.R. § 1626.15(e)). The charging party can sue the employer regardless of how the EEOC resolves its investigation.  See 29 U.S.C. §§ 626(c)(1), 626(e).

Also on March 27, 2008, Wright filed a Notice of Completion on Defendant's Motion to Dismiss an[d] Memorandum in Support (Docket No. 16), see Doc. 19, and later that day, Wright filed a (Corrected) Notice of Completion of Defendant Wright's Motion to Dismiss and Memorandum in Support (Docket no. 16), see Doc. 20.  Both documents notified the Court that the briefing upon his Motion to Dismiss Wright Individually and Memorandum in Support had been completed.

At the April 3, 2008 hearing, the United States conceded that it is assuming that Cortez has a property right to file a charge or claim with the EEOC.  See Transcript of Hearing (taken April 3, 2008)("Tr.") at 2:19-3:6 (Court & Zavitz).[1]  Cortez conceded that National Railroad Passengers Corp. v. Morgan, 536 U.S. 101 (2002), did not impose a mandate on the EEOC investigators and addressed only a plaintiff's duties under the law.  See Tr. at 11:2-11 (Court & Rodriguez).  Wright contended that EEOC investigators are supposed to be neutral arbiters and that their role is to gather and solicit information.  See id. at 22:5-15 (Zavitz & Court).  Wright asserted that, while the EEOC

---

[1]  The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

provides brochures and forms regarding caselaw like <u>National Railroad Passengers Corp. v. Morgan</u>, it is ultimately the individual claimant's responsibility to know that law and protect his or her rights under the law.  <u>See</u> <u>id.</u> at 25:18-25 (Court & Zavitz).  Wright conceded that it was assuming the existence of a property right to "file a claim with the agency."  <u>Id.</u> at 2:17-3:6 (Court & Zavitz).

Later on the day of the hearing, on April 3, 2008, the United States submitted supplemental authority.  <u>See</u> Notice of Supplemental Authority in Support of Motion to Dismiss, filed April 3, 2008 (Doc. 24)("Supplemental Notice").  In that notice, the United States stated that its counsel "incorrectly referenced the 180-day time period after which a charging party who is a federal sector employee may file a lawsuit with respect to pending ADEA charges under the EEOC's regulations." <u>Id.</u> at 1 (citing 29 C.F.R. § 1614.407(b)).  The United States explained that "the time period after which a charging party who is a private sector employee . . . may file a lawsuit under the EEOC's regulations with respect to ADEA charges is 60 days."  Supplemental Notice at 1 (citing 29 C.F.R. § 1626.18(b)).

## STANDARDS FOR DISMISSAL UNDER RULES 12(b)(1) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). The party invoking federal jurisdiction bears the burden of establishing its existence. <u>See</u> <u>McNutt v. Gen. Motors Acceptance Corp.</u>, 298 U.S. 178, 182-89 (1936); <u>Miller v. United States</u>, 710 F.2d 656, 662 (10th Cir. 1983).

Whenever it appears that the court lacks jurisdiction of the subject matter involved in an action, the court must dismiss the action. <u>See</u> <u>Tuck v. United Servs. Auto. Ass'n</u>, 859 F.2d 842, 844 (10th Cir. 1988). "The party seeking the exercise of jurisdiction in his favor must allege in his pleading the facts essential to show jurisdiction." <u>United States ex rel. Gen. Rock & Sand Corp. v.</u>

Chuska Dev. Corp., 55 F.3d 1491, 1495 (10th Cir. 1995)(internal quotations omitted). In determining whether a party has adequately presented facts sufficient to establish jurisdiction, the court should look to the complaint's face, see Whitelock v. Leatherman, 460 F.2d 507, 514 (10th Cir.1972), accepting the well-pleaded factual allegations as true, see United States v. Rodriguez Aguirre, 264 F.3d 1195, 1203 (10th Cir. 2001), but ignoring conclusory allegations of jurisdiction, see Groundhog v. Keeler, 442 F.2d 674, 677 (10th Cir. 1971).

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, and view those allegations in the light most favorable to the non-moving party and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citation omitted).

"[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir.2007)(quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1967, 1969). "The Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1974.)(alterations omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.

The United States Court of Appeals for the Tenth Circuit has stated that, when addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint and view those allegations in the light most favorable to the non-moving party. See Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999); Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998)(noting that, when "reviewing a decision on a motion to dismiss, we accept the factual allegations in the complaint as true and we resolve all reasonable inferences in the plaintiff's favor."); Yoder v. Honeywell Inc., 104 F.3d 1215, 1224 (10th Cir.), cert. denied, 522 U.S. 812 (1997). Although reasonable inferences raised in the pleadings must be resolved in favor of the plaintiff, see Dill v. City of Edmond, 155 F.3d 1193, 1203 (10th Cir. 1998), "unwarranted inferences drawn from facts or footless conclusions of law predicated upon them" are not accorded deference, Ryan v. Scoggin, 245 F.2d 54, 57 (10th Cir. 1957). See

-9-

<u>Hall v. Bellmon</u>, 935 F.2d 1106, 1111 (10th Cir. 1991)(explaining that a "court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.").

## LAW REGARDING QUALIFIED IMMUNITY

Federal officials are subject to suit in their individual capacities and are personally liable for monetary damages for alleged violations of federal constitutional rights in the course of their federal employment.  See <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 396 (1971).  To balance the interests of the complaining individual, and the burden put upon the government official in defending such cases, "courts recognize the affirmative defense of qualified immunity, which protects 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Gross v. Pirtle</u>, 245 F.3d 1151, 1155 (10th Cir. 2001)(quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).  Qualified immunity is judicially created and rooted in public policy.  The fear of suit may have a chilling effect on official decision-making, seriously deterring officials from exercising judgment with the decisiveness important to their office.  See <u>Richardson v. McKnight</u>, 521 U.S. 399, 407 (1997)(describing the purposes of qualified immunity "as protecting government's ability to perform its traditional functions by providing immunity where necessary to preserve the ability of government officials to serve the public good or to ensure that talented candidates were not deterred by the threat of damages suits from entering public service.")(internal quotations omitted); <u>Wyatt v. Cole</u>, 504 U.S. 158, 165 (1992)(detailing the public policy basis for the qualified immunity privilege); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 814 (1982)("It cannot be disputed seriously that claims frequently run against the innocent as well as the guilty -- at a cost not only to the defendant officials, but to society as a whole. . . . [T]here is the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the

unflinching discharge of their duties.")(internal citations and quotations omitted).

### 1.      Two-Part Test for Qualified Immunity.

The broad protection afforded by qualified immunity gives officials "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001)(quoting Behrens v. Pelletier, 516 U.S. 299, 308 (1996)).  When a defendant raises the affirmative defense of qualified immunity, "a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."  Saucier v. Katz, 533 U.S. 194, 200 (2001).  The qualified immunity privilege is "'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" Id. at 200-201 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

Once a defendant asserts the affirmative defense of qualified immunity, the burden then shifts to the plaintiff to establish a violation of a constitutional or statutory right by the defendant. See Gross v. Pirtle, 245 F.3d at 1155; Currier v. Doran, 242 F.3d 905, 917 (10th Cir. 2001), cert. denied, 534 U.S. 1019 (2001); Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000).

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry. . . In the course of determining whether a constitutional right was violated on the premise alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established.  This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry.  The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case.

Saucier v. Katz, 533 U.S. at 201 (citations omitted).

Should a plaintiff meet his burden to first establish a violation of a constitutional right, he or she is then required to demonstrate that the right alleged to have been violated was clearly established at the time of the defendant's allegedly unlawful conduct. See Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186; Gross v. Pirtle, 245 F.3d at 1156; Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995). Should the plaintiff fail to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity. See Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186; Gross v. Pirtle, 245 F.3d at 1156; Albright v. Rodriguez, 51 F.3d at 1535. "In short, although we will review the evidence in the light most favorable to the nonmoving party . . . the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186 (citing Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001)).

  **2.** **Clearly Established Law.**

Qualified immunity shields federal officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. at 818. A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned." Zweibon v. Mitchell, 720 F.2d 162, 172-173 (D.C. Cir. 1983), cert. denied, 469 U.S. 880 (1984). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Strepka v. Miller, Nos. 00-1294, 00-1389, 2001 WL 1475058 at * 5 (10th Cir. November 21, 2001)(citing Currier v. Doran, 242 F.3d at 923). "In determining whether the right was 'clearly established,' the

court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether the 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

As the Supreme Court has observed, it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful." Anderson v. Creighton, 483 U.S. at 640. However, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 635.

In the Tenth Circuit, to carry the burden of identifying a clearly established right, the plaintiff "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." Trotter v. Regents of Univ. of N.M., 219 F.3d 1179, 1184 (10th Cir. 2000)(quoting Hannula v. City of Lakewood, 907 F.2d 129, 131 (10th Cir. 1990), abrogated on other grounds, Dixon v. Richer, 922 F.2d 1456, 1461 (10th Cir. 1991)).  Moreover, that an official action may be in violation of an agency's internal procedures may not, in itself, violate any clearly established constitutional right.  See Herring v. Keenan, 218 F.3d 1171, 1180-81 (10th Cir. 2000)(explaining "that the fact that an official discloses information in violation of his own internal procedures does not make the disclosure a violation of a clearly established constitutional right to privacy."), cert. denied, 534 U.S. 840 (2001); Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1251 (10th Cir. 2003)("In considering the 'objective legal reasonableness' of the state officer's actions, one relevant factor is whether the defendant relied on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question.").

The plaintiff's burden to establish that the law is clearly established "must be undertaken in

light of the case's specific context, not as a broad proposition." <u>Saucier v. Katz</u>, 533 U.S. at 201.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." <u>Id.</u> at 202. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." <u>Medina v. City and County of Denver</u>, 960 F.2d 1493, 1498 (10th Cir. 1992). "To be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. " <u>Mimics, Inc. v. Village of Angel Fire</u>, 394 F.3d at 842.  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  <u>Id.</u>  (internal citations and quotations omitted).

## <u>LAW REGARDING THE FIFTH AMENDMENT</u>

The primary basis of the civil-justice system is the premise that property can be protected in a court of law.  Property rights can be more than just physical tangible objects; property rights can also be abstract and created by statute.  The Due-Process Clause of the United States Constitution's Fifth Amendment protects property interests.

### 1.    **Property Rights Protected by the Due-Process Clause.**

Benefits distributed by the government can be a form of property that the Due-Process Clause protects.  <u>See</u> <u>Goldberg v. Kelly</u>, 397 U.S. 254, 262 n.8 (1970)(holding that welfare benefits are property interests protected by the Due-Process Clause, and explaining that "[i]t may be realistic today to regard welfare entitlements as more like 'property' than a 'gratuity.'"); <u>Mathews v.</u>

Eldridge, 424 U.S. 319, 332 (1976)(stating that "the interest of an individual in continued receipt of [social security disability] benefits is a statutorily created 'property' interest protected by the Fifth Amendment."). As the Supreme Court has explained, to have a property interest in a government benefit, "a person must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement of it."  Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577 (1972).  The entitlement to the benefit arises from "statute, regulation, contract, or the like."  Blackburn v. City of Marshall, 42 F.3d 925, 941 (5th Cir. 1995).

To determine whether statutes or regulations create a protected property interest, the court must ask whether they place "substantive limitations on official discretion."  Olim v. Wakinekona, 461 U.S. 238, 249 (1983).  "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005).

### 2. **Procedural Due Process.**

"When assessing a procedural due process claim, this court looks to the three-factor balancing test articulated by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 334-35 . . . . (1976)."  Ward v. Anderson, 494 F.3d 929, 935 (10th Cir. 2007).  The three factors are:

> [(i)] . . . the private interest that will be affected by the official action; [(ii)] . . . the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [(iii)] . . . the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. (internal quotations omitted).  Ultimately, "due process is flexible and calls for such procedural protections as the particular situation demands."  United States v. Jones, 160 F.3d 641, 645-46 (10th Cir. 1998)(quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

In <u>Chavez v. Board of Education of Tularosa Municipal Schools</u>, No. CIV 05-380 JB/RLP, 2006 WL 4060667 (D.N.M. October 4, 2006)(Browning, J.), the Court held that the plaintiffs did not demonstrate a deprivation of procedural due process. The Court explained:

> The Plaintiffs have not demonstrated that [the Secretary of the New Mexico Public Education Department ("the Secretary")]'s actions violated [the student]'s constitutional right to procedural due process. The Plaintiffs have failed to allege a deprivation of life, liberty, or property. . . . The Plaintiffs . . . argue that [the Secretary]'s omissions, namely her refusal to form a program to actively monitor and support [the student]'s educational progress vis-a-vis his non-autistic peers, effectively amounted to a deprivation of due process because they kept [the student] from receiving special accommodation for his autism. Because "the Due Process Clause 'generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual,'" [the Secretary]'s omissions did not violate [the student]'s right to procedural due process. <u>Currier v. Doran</u>, 242 F.3d 905, 917 (10th Cir.2001)(quoting <u>DeShaney v. Winnebago County Dep't of Social Servs.</u>, 489 U.S. 189, 196 (1989)). As such, the Plaintiffs have not established that [the student]'s constitutional right to procedural due process was violated.

2006 WL 4060667 at *5.

While the Fifth Amendment protects against the deprivation of property rights in a general sense, more is required to establish that a particular defendant's acts violated those generalized precepts. The Supreme Court has consistently started its qualified immunity analysis by defining the claimed right with a high degree of specificity. <u>See</u>, <u>e.g.</u>, <u>Brosseau v. Haugen</u>, 543 U.S. 194, 200 (2004)(defining "the situation [the defendant] confronted" as "whether to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight"); <u>Wilson v. Layne</u>, 526 U.S. 603, 615 (1999)("[T]he appropriate question is the objective inquiry whether a reasonable officer could have believed that bringing members of the media into a home during the execution of an arrest warrant was lawful, in light of clearly established law and the information the officers possessed."); <u>Conn v. Gabbert</u>, 526 U.S. 286, 291 (1999)(defining

relevant question as whether "use of a search warrant by government actors violates an attorney's right to practice his profession"). Thus, courts must look to the specific application of that right to the facts of the particular case to determine if a constitutional violation has been established.

The two-step sequential inquiry that the Supreme Court prescribed in Saucier v. Katz is particularly important in cases where violations of substantive due-process rights are alleged. With respect to the first step, the Supreme Court has recognized that "'[s]ubstantive due process' analysis must begin with a careful description of the asserted right," because '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.'" Reno v. Flores, 507 U.S. 292, 302 (1993)(citing Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)). "Utmost care" is required when courts are asked to expand the concept of substantive due process, "because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended." Collins v. City of Harker Heights, 503 U.S. at 125 (citing Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225-26 (1985)).

The Supreme Court has stated that "the substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)(quoting Collins v. City of Harker Heights, 503 U.S. at 128). The Supreme Court has made clear that the guarantee of due process is not a "font of tort law" to be used to impose liability any time a government actor causes harm. County of Sacramento v. Lewis, 523 U.S. at 848 (internal quotations omitted). For this reason, negligent conduct is categorically insufficient to establish liability under the Due-Process Clause. See County of Sacramento v. Lewis, 523 U.S. at 848 ("Whether the point of the conscience shocking is reached when injuries are produced with

-17-

culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence, is a matter for closer calls.")(internal quotations and citations omitted).

> It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.

Id. (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)).

## **RELEVANT LAW REGARDING EEOC PROCEDURES**

The United States recognizes a right to be free of discrimination and created the Equal Employment Opportunity Commission to protect those rights.  While Cortez contends that the EEOC is charged as "gatekeeper" for any discrimination claims under statutes such as, among others, the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA"), it is only a gatekeeper in the sense that a plaintiff must go through the EEOC process before filing a claim in court.  Response at 3, 5-6.  Charging parties do not have to obtain EEOC permission to sue; they need only file their charge with the EEOC, which the EEOC then investigates in its role as a neutral quasi-judicial enforcement agency. See 29 U.S.C. § 626(d); 29 C.F.R. § 1626.8.

While Congress and the EEOC regulate the filing of discrimination charges with the EEOC, the federal courts regulate the filing of judicial cases.  If a person suffers discrimination in his or her employment, that person must process his or her claim through the EEOC before he or she can proceed to court.  See, e.g., Jones v. United Parcel Serv., Inc., 502 F.3d 1176, 1183 (10th Cir. 2007)(" In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit . . .  The first step to exhaustion is the filing of a charge of discrimination with the

EEOC.")(internal citations omitted).

Courts have held that EEOC investigative actions do not implicate due process, because the EEOC's investigation and resultant findings have no affect upon a discrimination victim's lawsuit and because it lacks final adjudicative power.  In Geotrator Corp. v. E.E.O.C., 592 F.2d 765 (4th Cir. 1979), the United States Court of Appeals for the Fourth Circuit held that an EEOC reasonable-cause determination is not final agency action, because it does not fix obligations or impose liability, and is merely preparatory to further proceedings.  See  592 F.2d at 768-69.  "The EEOC's negligence or inaction in the internal processing of a complaint has no determinate consequences because such actions are merely preparatory to a lawsuit by either the EEOC or the charging party in federal district court; only the district court may fix liability."  Ward v. E.E.O.C., 719 F.2d 311, 313-14 (9th Cir. 1983)(citing Geotrator Corp. v. E.E.O.C., 592 F.2d at 767-68).  Similarly, in Francis-Sobel v. University of Maine, 597 F.2d 15 (1st Cir. 1979), cert. denied, 444 U.S. 949 (1979), the United States Court of Appeals for the First Circuit said: "Nor do we think that even the arbitrary and capricious denial of the investigative and conciliatory benefits the EEOC can provide to a charging party transgresses the Due Process clause  in a way that would support the implication of a damage remedy." 597 F.2d at 18.  The First Circuit explained:

> Unlike Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, . . . (1971), this case involves the loss of alleged statutory rights to administrative assistance in the vindication of underlying, fundamental statutory and constitutional interests.  The interests themselves have not been lost, only the help that Congress intended charging parties receive in vindicating those rights. We think that such statutory rights, if they be "liberty or property" at all within the meaning of the Due Process Clause, are so tangential to the central thrust of Title VII rights for the deprivation of which Congress Did provide a remedy that an implied right of action cannot and should not be found here.  Indeed, were we to find that the right to EEOC assistance is protected by an implied right of action found in the Fifth Amendment, then every federal bureaucrat would be subject to judicial review of the most minute aspects of his responsibilities as they affect members of the public.

Such is a task we are neither eager nor constitutionally competent to undertake.

Id.  The Supreme Court recognized in Occidental Life Insurance Co. of California. v. E.E.O.C., 432 U.S. 355 (1977), that Congress intended to "allow the person aggrieved to elect to pursue his or her own remedy . . .  where there is agency inaction, dalliance, or dismissal of the charge, or unsatisfactory resolution."  432 U.S. at 365-66  (internal quotations omitted).

## ANALYSIS

Cortez' response to this motion primarily raises arguments that the Court has already rejected in dismissing the common-law tort claims under the Federal Tort Claims Act.  See Doc. 17.  For purposes of this motion only, the Court will assume that an EEO claim is a constitutionally protected property interest.  Even assuming, for purposes of this motion, that Cortez has some constitutionally protected property interest in his administrative EEO claim, Cortez has not shown that Wright has a constitutional duty to file or to amend Cortez' charge of discrimination on Cortez' behalf, or to advise Cortez to do so himself.

## I.   CORTEZ HAS NOT SHOWN THAT WRIGHT VIOLATED CORTEZ' RIGHT TO PROCEDURAL DUE-PROCESS.

Cortez contends that the EEOC procedures for processing discrete charges of discrimination are constitutionally inadequate.  See Response at 6-7.  He contends that he may show a procedural due-process violation by showing: (i) that he possessed a property interest protected by the due-process clause and (ii) that the EEOC's procedures are "constitutionally inadequate."  Id. at 4.  The Tenth Circuit has instructed courts to look to a three-factor balancing test "[w]hen assessing a procedural due process claim."  Ward v. Anderson, 494 F.3d at 935.  These factors are: (i) the private interest affected by the official action; (ii) the risk of erroneous deprivation of that interest through the procedures used; and (iii) the United States' interest, "including the function involved

and the fiscal and administrative burden that the additional or substitute procedural requirement would entail."  Id.

**A.  THE COURT WILL ASSUME THAT CORTEZ HAS A PROTECTABLE PROPERTY INTEREST.**

Cortez contends that his claims turn on whether the benefits "bestowed" by the EEOC investigation -- allowing a discrimination claim to proceed in court -- is a property interest protected by the Due-Process Clause of the Fifth Amendment.  See Response at 4 ("The public regulatory function of the EEOC's processing . . . bestows a governmental benefit on the charging property that is a form of property protected by the due process clause.").  Cortez contends that he has a protectable property interest in the EEOC investigation.  Cortez asserts that "[t]he benefits bestowed by the government in discrimination cases are property interests created by the fact that the government has legislated laws that provide for the EEOC to be the Agency that administers the statutory and regulatory framework governing discrimination in this country."  Response at 5.

Cortez further contends that Wright owed him a statutory duty to investigate and process his claims of discrimination.  See id. at 6-7.  Cortez argues that Wright breached that duty and, because of that breach, Cortez was harmed.  See id. at 7.  Specifically, Cortez alleges that he lost significant property interests without due process of law when  Wright failed to follow the Supreme Court's mandate in National Railroad Passengers Corp. v. Morgan, 536 U.S. 101 (2002), requiring separate charges of discrimination for each discrete act of discrimination.  See Response at 6.

Cortez states that, on June 10, 2002, when the Supreme Court issued its decision in National Railroad Passengers Corp. v. Morgan, instructing that discrete acts of discrimination required separate charges of discrimination, it also instructed the EEOC investigator to process claims as such; otherwise, charges of discrimination were not going to be considered in courts of law.  See

-21-

Response at 6.  Cortez maintains that, because the EEOC is the "gatekeeper" of "all things having to do with discrimination charges," the Supreme Court mandated to the EEOC and its investigators the duty of processing all charges as discrete acts of discrimination.  Response at 5-6.  Cortez maintains that the Supreme Court gives "'specific directives to the decisionmaker that[,] if the regulations' substantive predicates are present, a particular outcome must follow.'"  Response at 6 (quoting  Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 463 (1989)).  Cortez maintains, in other words, that the EEOC investigator must process all charges as discrete acts of discrimination; otherwise, the charging party will lose his property interests in being unable to bring discrimination charges before a federal court.  See Response at 6.  Cortez states that he was deprived of his constitutionally protected property rights, without due process and without just compensation, when Wright improperly processed his discrimination claims.  See Response at 7.

The Court need not decide whether all that Cortez contends are property rights are in fact constitutionally protected property rights.  It is sufficient for the Court to find that there is some constitutionally protected property right.  For purposes of this motion, the Court will assume that the United States created a property interest in a complainant's right file a claim with the agency. See Tr. at 2:17-3:6 (Court & Zavitz).

**B.    CORTEZ HAS NOT SHOWN THE OTHER FACTORS IN THE BALANCING TEST.**

The Court has assumed that Cortez has a property interest in his right to file a claim with the agency for the purpose of this motion.  See Tr. at 2:17-3:6 (Court & Zavitz).  Cortez has not expressly argued that there is risk of erroneous deprivation of that interest through the procedures the EEOC uses.  Instead, Cortez contends that, because "the EEOC is in charge of discrimination charges, the filing of a charging party's claim is not discretionary."  Response at 6.  Cortez asserts:

> The EEOC Investigator must investigate the claims made and make a decision as to whether or not the investigator believes there was discrimination in the workplace. The EEOC Investigator guides the charging party through each of the steps of the investigation including mediation with the employer.  Once the investigation is complete, the EEOC investigator decides whether there was a finding of discrimination or not and issues the right to sue letter.

Id. at 4.

The Court will assume that Cortez is arguing there is risk of erroneous deprivation of that property interest in the EEOC investigation process.  Cortez does not elaborate, however, on what the nature of that risk is.  Because Cortez does not offer argument regarding the nature of the risk to his property interest, the Court cannot balance his interest against that risk.  The Court notes that Cortez has not suggested what additional procedures he believes would prevent a deprivation of the alleged property interest he asserts in the EEOC's investigation of his discrimination claims.

On the other hand, the Court believes that the United States has a strong interest in preventing "every federal bureaucrat [from being] . . . subject to judicial review of the most minute aspects of his responsibilities as they affect members of the public." Francis-Sobel v. Univ. of Me., 597 F.2d at 18.  Many of the policies underlying qualified immunity for governmental officials also illuminate the United States' interest in the EEOC being free from liability as a result of its investigative functions.  Cf. Richardson v. McKnight, 521 U.S. at 407 (explaining that the purpose of qualified immunity is to "protect . . . [the] government's ability to perform its traditional functions by providing immunity where necessary to preserve the ability of governmental officials to serve the public good or to ensure that talented candidates were not deterred by the threat of damage suits from entering public service.").  The Court believes the potential chilling effect of allowing EEOC investigators to be held liable as a result of their investigative efforts would severely impact the United States' interest in investigating and conciliating discrimination claims.

Because Cortez has not elaborated on the nature of the risk of erroneous deprivation that he contends is inherent in EEOC investigations, and because Cortez has not described what additional procedures he believes are necessary to prevent erroneous deprivation, the United States' interest in preventing EEOC investigators from being chilled in their efforts outweighs Cortez' purported property interest.  See Chavez v. Bd. of Educ. of Tularosa Mun. Sch., 2006 WL 4060667 at *5 (explaining that "the Due Process Clause generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual")(internal quotations omitted).  The fact that EEOC investigators help claimants does not impose on them the requirement to be legal advisors.  Cortez has not stated a claim for violation of procedural due process by the Wright.

## II.    CORTEZ HAS NOT DEMONSTRATED A VIOLATION OF ANY SUBSTANTIVE DUE-PROCESS RIGHT.

Cortez contends that the EEOC misapplied the EEOC's rules and standards, and failed to give a meaningful review to Cortez, such that Cortez' benefits under federal discrimination law were lost.  See Response at 7.  Cortez' Complaint does not, however, set forth facts that establish a due-process claim under the Fifth Amendment of the Constitution.  There is no constitutional duty for Wright to protect Cortez' legal rights under the general principles of the Due-Process Clause, which has a standard higher than mere negligence.  See County of Sacramento v. Lewis, 523 U.S. at 846; Collins v. City of Harker Heights, 503 U.S. at 125; Daniels v. Williams, 474 U.S. at 331. Accordingly, the facts that Cortez alleges do not rise to the level of a constitutional violation.

While Cortez suggests that the EEOC is the administrative agency that "dispenses" the rights or benefit to employment free from discrimination, there is no allegation that Wright deliberately deceived Cortez or intentionally harmed him.  See Response at 1.  There is nothing shocking to the

Court's conscience in Wright's failure to advise Cortez of the latest Supreme Court decisions or of Cortez' being responsible for knowing the law or suffering the consequences.  See County of Sacramento v. Lewis, 523 U.S. at 846 (stating that "the substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.")(internal quotations omitted).

Thus, Cortez' attempt to portray Wright as the "master" of Cortez' discrimination claim fails. Not only does the EEOC lack any power to influence the subsequent prosecution of an investigated Title VII charge -- assuming that the EEOC is not prosecuting the charge itself -- it is also not the charging party's advocate during its investigation.  The EEOC, like any law enforcement agency, must be neutral when it receives a charge, because its role is primarily, to conciliate between the employee and his employer.  See 29 U.S.C. § 626(b); 29 C.F.R. § 1626.15.

## III.   THERE WAS NO VIOLATION OF CLEARLY ESTABLISHED LAW.

Finally, even assuming that Cortez could establish that Wright had some constitutional duty to protect Cortez' legal rights under the general principles of the Due-Process Clause, any such duty was not clearly established.  Even if the allegations of the Complaint were somehow deemed to state a violation of the protections contained in the Fifth Amendment, there is no violation of clearly established law.   There is nothing "indisputable" or "unquestioned" about any purported constitutional duty to amend or file charges for EEO claimants, or to advise EEO claimants about changes in the law.  Zweibon v. Mitchell, 720 F.2d at 173.

Wright represents that he is unaware of any case which has found a constitutional violation in any situation like this case.  See Motion at 9.  The Court has not, in its independent research, found a similar case.  Moreover, it is Cortez' burden -- not Wright's -- to show that the right alleged

-25-

to have been violated was clearly established at the time of the Wright's allegedly unlawful conduct. See Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186; Gross v. Pirtle, 245 F.3d at 1156; Albright v. Rodriguez, 51 F.3d at 1534. If Cortez is aware of any such law, it is his duty to come forward with it to avoid dismissal for failure to state a claim.

Cortez has pointed to no cases finding a due-process violation similar to what he is advocating. The cases that he cites address the denial of governmental benefits or entitlements, such as welfare and social security benefits and entitlements to continued public housing and continued public employment. See Response at 4-6. There is no "indisputable" or "unquestioned" constitutional benefit or entitlement to have the EEOC amend or to file charges for EEO claimants, or to advise EEO claimants about changes in the law. Zweibon v. Mitchell, 720 F.2d at 172-73.

Further, the Supreme Court in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), did not instruct the EEOC, or individual investigators, to do anything. The Supreme Court decided a legal issue in the factual context before it. As the Court stated in its prior Memorandum Opinion and Order, Cortez was ultimately responsible for interpreting the impact of that holding on his EEO claims. See Memorandum Opinion and Order at 14.

Cortez has failed to meet his burden of showing that the right alleged to have been violated was clearly established at the time of the alleged unlawful conduct asserted against Wright. See Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186; Gross v. Pirtle, 245 F.3d at 1156; Albright v. Rodriguez, 51 F.3d at 1531. Cortez has not demonstrated that "the contours of the right [he claims are] . . . sufficiently clear that a reasonable official would understand that what he is doing violates that right." Mimics, Inc. v. Village of Angel Fire, 394 F.3d at 842. Moreover, Cortez has not presented " a Supreme Court or Tenth Circuit decision on point, or the clearly established

weight of authority from other courts must have found the law to be as [Cortez] maintains." <u>Medina v. City and County of Denver</u>, 960 F.2d at 1498.  To the contrary, other courts have found that EEOC investigative actions do not implicate due process.  <u>See</u> <u>Francis-Sobel v. University of Maine</u>, 597 F.2d at 18;  Geotrator Corp. v. E.E.O.C.</u>, 592 F.2d at 768-69.  Accordingly, the Court will dismiss this action as to Wright individually on the basis of qualified immunity.

   **IT IS ORDERED** that the Motion to Dismiss Defendant Wright Individually is granted.

            _____
            UNITED STATES DISTRICT JUDGE

*Counsel:*

Augustine M. Rodriguez
Rodriguez Law Firm
Albuquerque, New Mexico

  *Attorney for the Plaintiff*

Gregory J. Fouratt
 United States Attorney
John W. Zavitz
 Assistant United States Attorney
Albuquerque, New Mexico

  *Attorneys for the Defendant*